The first case is United States v. Michael Cabassa. Good afternoon, Your Honors. This is Dan Irwin, Assistant Federal Defender from the District of Connecticut, on behalf of Mr. Cabassa. I think I'd reserve two minutes for rebuttal. The fundamental problem with the District Court's decision is that it imputed to Section 404 a substantive standard that the law does not recognize. In doing so, it denied Mr. Cabassa a complete review on the merits question, where he had a substantial prima facie case for a sentence reduction. It's well-established that in order to be entitled to first step after 404 release, a defendant must be convicted of a covered offense under the Fair Senate Act, and that if so, a reduction may be warranted within the discretion of the District Court judges guided by the 3553A factors. In denying Mr. Cabassa not only relief, but a complete review on the merits on the grounds that he was not a young, nonviolent first-time offender, the District Court added an implicit de facto eligibility criterion that was unsupported by the law. And the harm, the error, rather, was not harmless. Mr. Cabassa had significant evidence in support of a reduced sentence, and before I recite a little bit of that, we're not asking at this point for a reversal in that sentence reduction. We're asking that the case be remanded for a complete review of that evidence. It included the fact that his mandatory minimum had been cut in half. It included the fact that his guidelines are at least arguably reduced to 77 to 96 months, approximately a 175-month reduction. The initial sentencing was considered by a judge other than the judge that denied this case, and Mr. Cabassa had never exercised his right of allocution in front of her. And there were significant tensions between the aggravating and mitigating evidence in support of a sentence reduction. So, our position is that complete review was required to resolve that tension. I wanted to address briefly the standard of review, because I think there's some tension or perhaps some ambiguity in the briefs about how that applies. We don't dispute that the standard is abuse of discretion on the merits questions that once a person is found eligible, whether or not he's entitled to 404 relief is discretionary. Our contention is that that discretion, I think it's black-letter law, that when that discretion is exercised, it cannot be predicated on an erroneous proposition of law, which is what happened in this case. I'd analogize, I know with some jurisdictions, courts, well, I think every jurisdiction courts consider evidentiary rulings based on an abuse of discretion standard, but in some cases, if it's based on an interpretation of the code of evidence, that interpretation is subject to plenary review. And then, if the interpretation is correct, the admission of the evidence is thereby then reviewed for abuse of discretion. We analogize to that and contend that that is decisive in this case in terms of a remand. Just briefly, I'll address what I think may be sort of aggravating evidence that I presume the government will raise. In terms of my client's prison history and the necessity of, I think, a full review by which we, in this case, I think an allocution is necessary. Those are certainly bad facts for Mr. Kubasa, but they're not decisive facts. They shouldn't be decisive facts, at least without an opportunity to address and explain them in court. First, it's not clear that prison discipline reliably predicts post-release conduct. Certainly, prisons are dangerous places where a person can't walk away. Prison disciplinary machines effectuate different steps of interest. They're based on speed and order, the need to maintain order, far more than reliability. And to some extent, I think it's inequitable to hold a disciplinary record against a person if he obtained some of that record while serving an unduly lengthy sentence, which may be discovered upon full and complete review in this case. At this point, I've concluded my prepared remarks. The essence of our argument is that this discretionary act was predicated upon a mistake of law, and therefore, it's an abuse of discretion. I'm happy to entertain any questions that the court has. Thank you very much. Judge Karnick. I have a question about what you believe the Section 4 of the Act requires. In your briefs, you stressed that, it seemed to me, that you believe the district court had to conduct what you called a complete review. And that phrase appears in Subsection C of Section 404. But that section is entitled Limitations, and it says no court shall entertain a motion made if a previous motion has been denied after a complete review. It doesn't seem to me to impose an affirmative obligation. In fact, the Act seems somewhat unclear about the nature of the obligation here. Is that a fair reading of Section 404? Or do you believe that it places an affirmative obligation to, in essence, do a revisiting of the 3553A factors on district court? I agree with your characterization of complete as ambiguous or somewhat ambiguous with respect to the meaning of complete and the facts of this case. We think that it requires an open hearing. I mentioned Mr. Cavassa's right to allocute. We're not contending that that's necessary in every case. We can imagine cases in which there could be a denial on the papers and a complete review could be done on the papers. But in these circumstances, particularly where it wasn't Judge Burns, the original sentencing judge, reviewing the sentence, it's our position that it was not complete. I hope that answers your question. But you're saying that Section 404 does require a complete review and what constitutes a complete review will depend on the circumstances? That's correct. Is that correct? Because we've said in Holloway recently that a plenary review is not required. A recalculation of the sentencing guideline range isn't necessarily required and much is committed to the district court's discretion. You nonetheless stress the completeness that's required in your view. Is that right? That's correct. I guess to round that out or fold Holloway into it, we're not asking for a plenary resentencing in this case. We're asking that Mr. Cavassa be able to account for the seeming discrepancy in the post-sentencing evidence. I don't know that that's distinct from what Holloway has said and we're not asking for plenary resentencing either. I'm going to interrupt for a second because I think I have some confusion about what is understood, what you understand by plenary. Yes. I think that plenary would be that essentially we're starting over de novo. We're going to rebrief all the issues. We're going to recalculate guidelines, determinations. We're going to have fallout allocutions. Essentially, we're redoing the sentence and reconsidering the evidence. In this case, we're asking for consideration of the two most powerful pieces of legal evidence in support of the sentence reduction, which is the mandatory minimum that was halved and the likely redone guideline calculations. You might be arguing then for a more complete process where such major factors as halving the mandatory minimum have occurred and where the new judge has never gone through the 3553 factors before. Am I right in understanding that? That's correct. I suppose in other words, I think that that consideration, the changes in the law have to be folded into the 3553A factors. The judge may say, I don't love your conduct in prison. It gives me pause. Perhaps I don't give you as much of a reduction as I would have. However, there have been vast changes in what society has viewed these sentences as worth and I'm going to consider that and reform or reduce the sentence. Thank you. That's all I have, Judge Cabranes. Thank you. Judge Park. Yes. Thank you. Counsel, if the district court had said, I'm going to exercise my discretion to resentence only those defendants who are young, nonviolent, first-time drug offenders, instead of the way she said it, that would have been okay, right? In your view. I'm not, perhaps I'm misunderstanding the question, but I'm not sure that it would have been okay. Well, I guess what I'm getting at is it seems harmless, I guess at a minimum, whether the district court was saying that's how she's going to interpret the act or that's what Congress was intending to focus on. It was within her discretion and eligibility for resentencing is up to the district court. So, what's the difference? So, I see two parts to that. If I could just kind of back up to the part where I might be misunderstanding you. If the district court said, I'm only going to exercise my discretion to resentence young, first-time nonviolent offenders, that seems to be a blanket rule. And this circuit I know has a case from several years ago. Forgive me, I don't recall the name of it, but a judge had made a blanket policy on a certain guidelines enhancement and the circumstances of arrest and seemed to apply that prospectively in every case. And I believe this circuit held that that was not permissible. So, I don't believe that the district judge could do that based on the reasoning of this case. To the extent that your question perhaps doesn't include that or that I'm misreading the sort of setup to the hypothetical, it's not a harmless error because it fundamentally denied Mr. Kibasa that complete review. And what the core of this statute is about, I think it's simplest reduction to what it means is that these crack sentences are breathtakingly wrong. It is a serious problem and we have to have a serious procedure in place to address that. Where Mr. Kibasa is denied full examination of whether he is entitled to a reduction, that unto itself is a significant right and it's not harmless. We've not yet claimed that he will necessarily get the reduction, but this judge never heard from him at all, nor gave him an opportunity to account for these things. And the denial of that right to be heard or that opportunity to be heard at least was rooted in a misinterpretation of the law that the statute was geared towards a prototypical defendant as opposed to lengthy crack sentences. Thank you. Counsel, this is Judge Cabranes. I know that you would be aware of the fact that these First Step Act cases are percolating in our circuit as well as others. And so perhaps I could draw your attention to a couple of these cases, which may or may not be relevant. And one of them, of course, is a recent decision by our court in United States v. Moore, M-O-O-R-E, which is now published at 975 F. 3rd 84. That was this year. Are you familiar with U.S. v. Moore? Yes, I am. And you may recall that one of the holdings of that case is that the First Step Act does not require plenary re-sentencing. You don't disagree with that proposition? No, I don't. Instead, you're arguing for some kind of re-sentencing less than plenary and presumably less. What would that consist of? Re-sentencing which is less than plenary? On this record, I think that it consists of a hearing where Mr. Kibasa is given an opportunity to account for what I think is a compelling, equitable legal argument for reduction in terms of changes of the law and the challenges that he faces in terms of aggravating evidence that he's accumulated over the years in prison. That's what we envision in this case. So you envisage essentially a survey of the various unfortunate occurrences involving Mr. Kibasa while he's been incarcerated, right? Correct, an opportunity to explain them. An opportunity to explain them. What does that consist of? Does that include the taking of evidence? No, we're not looking for, at least I can't think of a reason where we would want a full on, whether you want to say it resembles a first-time sentencing or an evidentiary hearing where witnesses are sworn. I think in this case, it means allocution and perhaps if any more documentary evidence is warranted. There are various reasons inmates get disciplinary tickets and these instances can have different levels of gravity based on what actually happened. I think that Mr. Kibasa should be given an opportunity to address that. Let me ask you about that. Why wouldn't he have all the process that's due and appropriate with the benefit of your excellent counsel as well as perhaps an affidavit by Mr. Kibasa setting forth his view on each of these matters? Again, with your assistance, which I'm sure would be helpful in the formulation of a coherent statement of facts or perspective. Would that be adequate in your view? No, it wouldn't. I have two reasons I say that. I'm sensitive to what I think is contained in the court's question. I know I've seen arguments in the government's brief that we should have provided further affidavits and perhaps we should have but at some level I think there's also a question of judicial economy and that a first motion should be robust and tell the story but that it doesn't need to gild the lily. It comes from jurisdictions where there's a feeling on the bench that that happens because of fear of subsequent review. Second is a more anecdotal instance. I recall a sentencing I was at where a defendant got a pretty good deal and was asking that the judge implement the best version of that deal. She said, you know, sir, you have this lengthy record. Everyone stands in front of me and tells me that they'll behave themselves if I give them what they're asking for and she said, how do I know you're going to do what you say and you'll lead the criminal life? He took a long pause, tearful eyes and he looked her in the eye and said, I'm done. On a cold record, this court couldn't distinguish and I would add the conclusion is that the defendant got the break that he was seeking from the judge. On a cold record, no court could distinguish the defendant that said, I'm done maliciously or less than truthfully and the defendant who made that and was deemed credible in the assertion of the finality, conclusion of his criminal life. That judge gave him that break and it was only because he had been brought into the courtroom to address that very question. Well, if that sort of hearing even if it's done virtually as I suppose it would be at this time presumably your client would be contesting or disputing the views of those persons in the administration of the prison who were responsible for charging him with some misconduct. So Mr. Cabasa would be contesting the charges against him, is that right? I don't know that he would. Certainly there could be some element of that but we view it as either those are I don't want to say that they're irrelevant to the sentencing reduction determination but they're not all that's relevant and if that weight is going to be placed on those determinations I think that Mr. Cabasa should be entitled to address it. We're not seeking to re-litigate all of the underlying issues but there are some assumptions and some speculations made in the record I think particularly in terms of the conviction about the use of force against a corrections officer that was a C1C plea there was no opportunity for a Watts acquitted conduct finding so that's not re-litigating that's just addressing what isn't there. Mr. Cabasa didn't litigate those issues with an eye towards first step back relief he had no way of knowing that this change of the law was coming so I think he should be given the opportunity to round that out and fully contextualize everything. But in the course of doing that in the nature of things the Federal Bureau of Prisons people or the correctional people would presumably wish to have an opportunity to be heard and therefore I would guess we're in the midst it necessarily involves an evidentiary hearing that is they would presumably have a view of this matter or that matter different from that of Mr. Cabasa, right? I don't know that they would we're not looking to bring a 1983 claim against them look this isn't the first time I've handled an inmate with a disciplinary record one thing that comes to mind is that at multiple clients with disciplinary tickets there's no speedy trial provision in prison discipline and frequently you can spend the weekend in segregation if you plead to an infraction or you can spend a month in segregation while you wait to litigate it I don't know that we're necessarily trying to challenge their findings but to add to some of how that record came to be additionally, Mr. Cabasa has a history as a drug addict and a lot of these disciplinary tickets are drug related I think that he should be given an opportunity to talk about his substance abuse issues even if he does have the tickets let me come at this from a slightly different perspective you're not you're not prepared Mr. Cabasa is not prepared to preface his allocution by adoption of the views of the correctional authorities would he be prepared to to accept his culpability for these various incidents or occurrences and then in effect provide a perspective on those matters as to which he is prepared to exceed perhaps I might just frame it he's likely to accept culpability for the offenses within prison disciplinary system but to argue that they're not relevant with respect to predicting his rehabilitation and conduct on supervised release where he granted this sentence reduction okay let me ask you about one other case that's percolating in this district in this circuit of which you may or may not be aware and that is United States versus Gadsden G-A-D-S-D-E-N 19- 3139 which was argued before a panel of our court on November 17 2020 are you aware of that case? I don't believe that I am aware of that one I apologize your honor no no it's okay it's a difficult time I'm glad to have you here let me give you a citation well you have it 19- 3139 was argued on November 17 and it is that panel is considering the question and I quote whether a defendant is categorically entitled to an in-court hearing on a motion for a sentence reduction under the first step act unquote that's U.S. against Gadsden let me suggest this we'll be hearing from the government of course momentarily but I think if Gadsden is decided before our panel has a chance to decide this case let us just assume that counsel will then have one week from the date of any decision by the other panel any decision by the Gadsden panel to submit a letter brief to us regarding the significance of zel non the significance or lack of significance of the panel decision in Gadsden okay we're ready I think to hear from the government on this hello I am Natasha Frysmas an assistant United States attorney for the U.S. attorney's office for the district of Connecticut in this matter the district court properly exercised discretion to deny the defendant's motion for relief under the first step act as found by this court in United States versus Moore the first step act requires the district court to conduct a two-part inquiry first determine whether the defendant is eligible for reduction and second if so determine whether and to what extent to exercise discretion to grant relief in this case the district court did precisely this first the district court agreed with the party that the defendant was eligible for relief and then after reviewing the materials in the record declined to grant relief at issue on appeal is a second inquiry required under first step act specifically the discretionary denial in this case the district court articulated a reasonable basis for its decision in a 17 page written decision and while there are errors in the district court's decision which were acknowledged in our brief the government submits that these were not central to its decision and should amount to harmless error given the clear expression of the district court's discretion that was grounded on numerous facts from the record at the core of the district court's discretionary decision are three main points first the defendant's criminal history of which he had amassed 20 criminal history points by the age of 28 second was the conduct which the district court noted involved a considerable quantity of cocaine based by an individual who was a professional drug dealer who was engaged in the conduct for 18 years third an individual who had continued to engage in criminal conduct while he was in detention specifically incurring 15 citations year after year notably one within the year of his motion as well as a 2008 conviction which earned him an additional 27 months on top of an already considerable sentence that was earned in this case additionally the defendant's argument the first step back requires quote a complete review on the merit end quote including the recalculation of the guidelines based on the cocaine based quantity lacks merit and should be foreclosed by this court's ruling in the United States v. Moore in that case this court pointed to the argument grounded in the same clause 404c as if this was to hide such a procedural requirement this would be quote indeed an elephant in a mouse hole end quote instead the district court is only required to apply sections 2 and 3 of the Fair Sentencing Act and again this is precisely what happened in this case there was also a full citation of submissions and the record in the district court's case there's no indication the district court did not consider all these factors and there's more than enough here for an appropriate review of that decision making authority additionally the defendant had the opportunity through experienced counsel to submit multiple filings he could have submitted any arguments and did submit many arguments in support of his motion but after reviewing all the materials the district court nonetheless determined that the grant of his discretion should be to deny release finally with regards to the issue of the district court's description of the legislative history the government cements that its review of the decision indicates that the description is more of an introductory rather than an underpinning of the decision indeed it is described in two very short paragraphs that total 144 words in the 17 page decision it's not our interpretation that this was a blanket rule but merely an introductory description of what the district court was thinking when it for these reasons and the reasons stated in our brief today for the reasons stated today and in our brief we believe the district court acted within its discretion and the district court should affirm that decision thank you at this time I've concluded all my prepared remarks I'm prepared to answer any questions the panel may have thank you very much Judge Carney yes Ms. Fry-Smith do you agree with the Mr. Irwin's position that Mr. Kibasa originally faced a 240 month or 20 year mandatory minimum in a guideline range of 262 to 327 months at sentencing but if he were sentenced today after the Fair Sentencing Act and so on he would have faced a 60 month or 5 year mandatory minimum in a range somewhere in the proximity of 77 to 96 months that is going from a 20 year mandatory minimum to a 5 year mandatory minimum is that correct yes your honor we do agree that if the district court was to apply current law that would be the resulting guidelines however we submit that under United States v. Moore the district court is not required to make those calculations I understand that but I want to understand what the district court would consider if one were conducting a resentencing the circumstances have changed and it looked like though Congress was intending to reduce and then make retroactive the penalties that had been in place for certain drug crimes so I just wanted to see if we're on the same page to begin at the beginning he would have gone from a 20 year mandatory minimum to a 5 year mandatory minimum am I right also that the government in June sought an indicative ruling from the district court and consented appropriately potentially to a reduction to time served that he had served 14 years and 3 months and in light of the changes in the law the government agreed that a sentence of time served would be appropriate is that right that is correct your honor however we submit that our request for reconsideration and this court review the discretionary determination are completely separate issues I understand I understand that these are separate issues but they provide context for me because my real question is even in light of Moore where we have said that plenary resentencing is not required by the first step act I wonder if there are any boundaries that the government would acknowledge to the exercise of the district courts discretion on resentencing and I ask that particularly here because it caught my attention that Judge Burns had done the original sentencing and then he had considered the plenary sentencing act request in 2011 and then Judge Bryant acted on this request and you know it seems to me that Moore tells us that a plenary sentence isn't required by the act but I wonder if in some circumstances it might be use of discretion not to incorporate in one's review certain elements of the sentencing process and I wonder if you could just speak to that concern Yes Your Honor as indicated by the court the use of discretion standard it is very permissive and deferential but it's certainly not a rubber stamp the district court does need to articulate a reasoning that allows review and that decision needs to fall within a range of what is considered a permissible decision and that's necessarily a very fact specific undertaking so the same factors here could not be enough to support a denial because the district court would have had to overlook or minimize a lot of other contrary factors and undeniably the more district court specifies what factors considered and how it weighed those it certainly helps with an appellate review and we have that in this decision so here there's nothing about what the district court considered Would you say that she considered on the record all the 3553A factors? Yes Your Honor and I do believe a good indication of that is that in the district court denial of the motion for a request for an indicative ruling she did state the district court did note that it wouldn't fulfill the objectives of the 3553A factors to grant release and that it would also undermine not only those factors but also prison safety and security and the government's interpretation indicates the district court has been considering these factors all along and I believe it is United States as a summary order United States versus Bell, this court assumed without deciding that even if the district court had to consider all the 3553A factors it was not required to make robotic incantations regarding these findings or to respond to every argument that was raised in the record the court would continue to presume as with other sentencing that unless it was clear on the record that the court had considered all the evidence before it and in this case the district court did have a constrictively lengthy decision where it noted all the filings, all the procedural history and all of including the defendant's criminal history, his 15 discipline citations, there is a substantial amount of recitation that's set forth and so while it is unclear go ahead please I was going to say why it is unclear in the circuit as to the precise level that's required for the district court to articulate it certainly seems that here we have that and that there is a substantial amount of information provided let me ask you about something else that I took from your brief my review of Mr. Kibasa's record suggests that he did have violent offenses as a young man in 1994 two of them in 1998 and he then had a long run of non-violent offenses including most recently I would say 2008 is the Hazleton incident in the prison refusing to obey an order where there's some perhaps confusion in the record about exactly whether he pushed a guard or did not but then from 2008 to now so that's 12 years 11 years we see a series of non-violent offenses possessing unauthorized items and drug and alcohol related conduct which the district court seemed to attach a lot of significance to and I agree they're concerning obviously non-compliant behavior in a prison perhaps reflective of a addiction but the district court but in your brief you seem to suggest that they all have a tinge of violence to them because drug crime is often related to violence am I right in understanding that you were suggesting that these possession offenses from 2008 to now ought to be seen as tantamount to violent offenses or am I misunderstanding? partially correct your honor I think what we are trying to do is to clarify what the district court might have viewed them as being still violent in terms of I believe the record is correct as your honor has recited that there is not citations that are very clearly undeniably violent past the 2008 allegations however the district court did properly characterize the history of the violence and the district court did properly characterize the citations as continuing conduct and it's evident from the district court's decision that it believes that the three factors described before were serious in the continuation of the criminal conduct with respect to its characterization as the defendant is still being violent the best insight that I think can be gleaned from the district court rationale behind that again comes from the denial of the request for the indicative ruling on page 6 of that decision the district court took great pain she she while incarcerated in federal prison within the sentence of clearly demonstrate that Mr. Kibasa is a violent person with a penchant for criminal activity indicating that from the district court's perspective the continuing criminal conduct focusing on the 2008 conviction it appears were the basis for that reasoning the continuing conduct 2008 was the last physical encounter that we have in the record that was 12 years ago since then it's been prison citation for drug or alcohol possession isn't that correct that's correct your honor and the district court also acknowledges that distinction but for whatever reason the district court found those drug convictions the drug possession convictions to still be significant and a basis for finding the violence so in our brief when we were trying to articulate a rationale behind that we were trying to point to the interrelation between those two and that they often go hand in hand okay well I understand your dilemma in that and I also don't want my comments to be understood to be any criticism of the government's position that the time served would have been sufficient at 14 years and nonetheless the district court chose to in her discretion and close the sentence or maintain a sentence six years longer than that so please don't take it as criticism thank you very much that's all I have Judge Cabranas your honor thank you thanks very much Judge Park no questions thank you let me ask the government with regard to the pending case of the United States versus Gadsden are you aware of that case unfortunately your honor I am also not aware of that case that's okay I just wanted to check with you because my colleagues and I are aware of it and not the end of the world it was on the calendar of Tuesday November 17 before another panel of our court and so I will say to you as I said to defendants counsel if and when there is a decision in Gadsden we would appreciate receiving a letter brief from both sides no more than five pages double spaced filed simultaneously within a week within seven days of any decision in the United States versus Gadsden 19- 3139- CR that's the day calendar of Tuesday November 17 thank you very much we'll reserve decision is there any rebuttal Judge Kovanec oh I'm sorry a rebuttal of course thank you Judge just briefly our position is that I think with the umbrella over the government's comments we don't dispute that 404 release is discretionary but we don't concede that it's a gratuity to Congress it has been two administrations passed this sentencing reform law because they saw a serious problem and unduly lengthy crack cocaine sentences Mr. Kavassa's criminal history and offense conduct was based in both his old guidelines calculation as well as his new one this may not be the case but the statutory regime holds out the possibility that there's a person who was convicted for an offense in 2005 and another person for the exact same offense today and there's a sentencing disparity of approximately 15 years based on another that the passage of time complete review is warranted to avoid that possibility and disabuse the populace that there's any real concern that that's happening with respect to more we don't contend that the district court was required to recalculate but it is nonetheless powerful evidence about the change in circumstances with respect to violence defendants in this district are routinely not incarcerated supervising the least drug violations they've never been claimed to be violent for people on the outside they shouldn't be claimed to be violent for people on the inside with respect to Gatson we welcome the opportunity to brief the question but we don't contend for today that every defendant is entitled to or requires an in person hearing with respect to that we ask that the court rehearse and remand with instructions to complete a complete review thank you thank you very much we very much appreciate excellent arguments on both sides and we will reserve the decision thank you thank you